```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
DEUTSCHE BANK TRUST COMPANY                                    :
AMERICAS, solely as Trustee,                                   :
                                                               :         1:15-cv-3869-GHW
                                                  Plaintiff,   :
                                                               :              ORDER
                          -against-                            :
                                                               :
AMERICAN GENERAL LIFE INSURANCE                                :
COMPANY, et al.,                                               :
                                                               :
                                                Defendants.    :
                                                               :
-------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I.  INTRODUCTION

Plaintiff Deutsche Bank Trust Company Americas ("the Trustee") commenced this interpleader action on May 19, 2015, seeking to resolve competing claims on outstanding payments of principal owed to two classes of noteholders. In order to satisfy the jurisdictional requirements of 28 U.S.C. § 1335(a), the Trustee filed a motion to approve the form of the bond, which was offered to cover all disputed amounts at issue. The Court approved the form and amount of the bond, but with the caveat that prejudgment interest at New York's statutory rate be included in all future increases to the bond amount. American General Life Insurance Company, a holder of one of the classes of notes, filed a motion for partial reconsideration, arguing that the inclusion of prejudgment interest in the bond is inappropriate because the Trustee already pays interest on the principal owed to both classes of noteholders under the agreed-upon rates of the notes. For the reasons discussed below, the motion for partial reconsideration is GRANTED.

## II.  BACKGROUND

The underlying dispute is between the beneficial owners of two classes of notes issued in a collateralized debt obligation: Class I-MM Notes, in which American General Life Insurance Company ("AGL") is a beneficial owner; and Class I-A Notes, in which Serengeti Opportunities MM LP and Serengeti Lycaon MM LP (collectively, "Serengeti") are beneficial owners.  On July 14, 2014, the issuer of the Notes notified the Trustee that an Event of Default under the terms of the notes had occurred.  Compl., Dkt. No. 1, at ¶6.  The Event of Default triggered an acceleration provision in the notes, and on October 9, 2014 the Trustee declared all outstanding principal of the notes, together with all accrued and unpaid interest, currently due and payable in full.  *Id.* at ¶¶6-7.  Because there has been no direction to liquidate, the Trustee continues to collect principal and interest proceeds from the notes' collateral, and pays those out quarterly.  *Id.* at ¶8.  The Trustee has made three such payments since the acceleration was triggered.  The next quarterly payment is due on September 7, 2015.

AGL and Serengeti disagree as to the proper order of payments of outstanding principal among the two noteholder classes.  AGL argues that Class I-A Notes are essentially subordinated to Class I-MM Notes.  Accordingly, AGL asserts that any payments of principal owed must first be applied towards the outstanding principal on Class I-MM Notes, and only after the entire principal amount of those notes has been satisfied, may any payments be made towards the outstanding principal owed on Class I-A Notes.  *Id.* at ¶14.  In apparent agreement with AGL, the Trustee has made quarterly payments of principal to holders of Class I-MM Notes, but not holders of Class I-A Notes, since the Trustee's notice of acceleration.  Serengeti Answer and Countercl., Dkt. No. 29, at ¶49.  Serengeti, in contrast, argues that all payments to satisfy outstanding principal must be made to both the Class I-MM Notes and the Class I-A Notes on a *pari passu* basis.  Compl. at ¶12.

Importantly, the parties do not dispute that the Trustee continues to make timely interest payments on the principal owed to holders of both classes of notes. Under the terms of the Class I-MM Notes, holders are entitled to interest on the principal amount of their notes at the rate of LIBOR (London Interbank Offered Rate) plus the relevant applicable margin. *See* Trust Deed, Dkt. No. 1-2, at p. 69 of 86; Terms and Conditions of the Notes, Dkt. No. 1-3, at pp. 20, 22 of 86. Under the terms of the Class I-A Notes, holders are entitled to interest on the principal amount of their notes at the rate of LIBOR plus 0.75%. *See* Trust Deed, Dkt. No. 1-2, at p. 78 of 86; Terms and Conditions of the Notes, Dkt. No. 1-3, at p. 20 of 86.

The Trustee filed a bond with the Clerk of Court, and on July 10, 2015, filed a motion for the Court to approve the form and amount of the bond offered by the Trustee. Dkt. Nos. 28, 30-32. The bond, issued by National Union Fire Insurance Company of Pittsburgh, PA, was in the amount of $6,715,637.19. Interpleader Bond, Dkt. No. 19. The bond represented the total amount of principal that would have been paid to Class I-A Noteholders, had the Trustee made the three previous payments of principal on a *pari passu* basis to both Class I-MM Notes and Class I-A Notes. *Id.* at 2-3. The initial $6,715,637.19 bond did not purport to include any prejudgment interest. Pl.'s Mem. Law Supp. Mot. Approve Bond, Dkt. No. 32, at 8 n.7. The bond also provided that, for each subsequent payment of principal made by the Trustee to Class I-MM Noteholders, the bond would increase to account for the amount that would have been paid to Class I-A Noteholders had the payment been made on a *pari passu* basis. *Id.* at 3.

The Court held a hearing on July 6, 2015, in which the parties addressed the sufficiency of the posted bond. Serengeti represented that the bond "reflects the full amount disputed by the parties to date, putting aside prejudgment interest for a moment." July 6, 2015 Hr'g Tr., Dkt. No. 35, at 18. On the issue of prejudgment interest, Serengeti indicated that it could recover interest at

the statutory rate of nine percent, and asserted that it wanted "the bond to reflect that full amount." *Id.* at 18-19.

The Court ordered that any responses to the Trustee's motion be filed by July 20, 2015. Dkt. No. 34.  Serengeti filed a timely response on July 20, 2015, requesting that the Trustee include prejudgment interest at the New York statutory rate in all future increases to the bond amount, as Serengeti had indicated during the July 6, 2015 hearing.  No other parties, including AGL, filed a response by the July 20, 2015 deadline.  The Court shortly thereafter approved the form and amount of the bond, with the caveat that, as requested in Serengeti's response to the motion to approve the bond, prejudgment interest at New York's statutory rate must be included in all future increases to the bond amount.  Dkt. No. 42.

AGL filed a motion for partial reconsideration, arguing that adding prejudgment interest to future increases in the bond amount is contrary to New York law because Serengeti already receives interest payments on the outstanding principal under the terms of the Class I-A Notes.

### III.  ANALYSIS

#### A.  Motion for Reconsideration

The standard governing a motion for reconsideration is strict. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Oji v. Yonkers Police Dep't,* No. 12 Civ. 8125, 2013 WL 4935588, at *1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito,* 253 F.Supp.2d 713, 715 (S.D.N.Y.2003)).  "Typical grounds for reconsideration include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice." *S.E.C. v. Wyly*, No. 10 CIV. 5760 SAS, 2015 WL 427423, at *1 (S.D.N.Y. Feb. 2, 2015) (internal quotation marks and citation omitted).

As an initial matter, AGL explains that it did not file a response by the July 20, 2015 deadline because it agreed with Trustee's positions as set forth in its motion to approve the bond. Because Serengeti filed its response requesting prejudgment interest on the date of the deadline, and because the Court approved the bond and Serengeti's request for prejudgment interest only one day later, AGL posits that it did not have a meaningful opportunity to address Serengeti's request for prejudgment interest. Although there is some merit to AGL's contention, it nevertheless should have filed a timely response to the Trustee's motion.

First, AGL was aware that Serengeti intended to seek prejudgment interest, given that the topic was specifically, albeit briefly, addressed during the July 6, 2015 status conference. July 6, 2015 Hr'g Tr. at 18-19. Moreover, the Court's July 13, 2015 Order states that "holders of Class I notes"—*i.e.*, AGL—". . . must file any response to plaintiff's motion no later than July 20, 2015." Even if AGL agreed with the Trustee's positions, the Court's order did not invite only adverse responses to the motion, and Serengeti's position regarding prejudgment interest had been plainly raised at the preceding conference. A greater than negligible amount of the parties'—and the Court's—resources might have been saved had AGL responded in support of the Trustee's motion by the established deadline, anticipating Serengeti's previously expressed request, or had promptly requested an extension of time after receiving Serengeti's response. But that is water under the bridge. As discussed further below, AGL meets the high standard warranting reconsideration.

### B. Prejudgment Interest

As a general rule, 28 U.S.C. § 1335 requires that a plaintiff deposit or post a bond in an amount equal to the largest claim. Wright & Miller, *Practice in Interpleader Actions—Requirement of Deposit in Court or Posting of Bond*, 7 Fed. Prac. & Proc. Civ. § 1716 (3d ed.) (hereinafter "Wright &

Miller, § 1716"). In addition, "[t]he district judge may direct that the deposit be augmented by any interest that might accrue on the claim, periodic installments that fall due during the pendency of the interpleader proceeding, or an additional deposit to cover a new and larger claim to the fund." Wright & Miller, § 1716; *see, e.g.*, *Stuyvesant Ins. Co. v. Dean Constr. Co.*, 254 F. Supp. 102, 113, (S.D.N.Y. 1966), *affirmed per curiam sub nom.*, *Stuyvesant Ins. Co. v. Kelly*, 382 F.2d 991 (2d Cir. 1967).

Here, the amount of Serengeti and the Class I-A Noteholders' claim—and thereby the amount of the bond that the Trustee was required to post under § 1335—was for payments on principal that Serengeti believes should have been made on a *pari passu* basis, as well as for any future payments of principal to the extent that they too are not made on a *pari passu* basis. Serengeti's claim does not cover interest payments on the outstanding principal owed under the Class I-A Notes because as discussed above, it already receives timely interest payments from the Trustee in the amount specified by the notes, *i.e.*, LIBOR plus 0.75%. Thus, additional prejudgment interest at the New York statutory rate is unnecessary for the bond to cover "the entire sum which [Serengeti] claims." *Metal Transp. Corp.*, 288 F.2d at 365. Nevertheless, Serengeti requested that the Court apply prejudgment interest at New York statutory rate, *see* CPLR § 5004, rather than the contract rate specified in the notes to all future increases in the bond.

Courts apply state law to determine whether prejudgment interest is due in federal interpleader actions based on diversity of citizenship. *A & E Television Networks, LLC v. Pivot Point Entm't, LLC*, 771 F. Supp. 2d 296, 303 n.5 (S.D.N.Y. 2011). "Under New York Law, in an action of an equitable nature *e.g.*, interpleader, interest and the rate and date from which it shall be computed shall be in the court's discretion." *Deutsche Bank Trust Co. Americas v. Elliot Int'l, L.P.*, No. 09 CIV.5242 WHP, 2011 WL 2421297, at *4 (S.D.N.Y. June 6, 2011) (quoting N.Y.C.P.L.R. § 5001(a)) (internal quotation marks and brackets omitted) *on reconsideration in part*, No. 09 CIV. 5242 WHP, 2011 WL 10901798 (S.D.N.Y. Sept. 2, 2011). CPLR § 5004 provides that "[i]nterest shall be at the

rate of nine per centum per annum, except where otherwise provided by statute." However, where a contract provides a rate at which interest is to be calculated, then the contractual rate, rather than the New York statutory rate, should ordinarily apply. *See, e.g.*, *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 258, 952 N.E.2d 482, 488-489 (2011) (explaining that "New York courts have long held that when an agreement involving an indebtedness provides that the interest shall be at a specified rate . . . then the contract rate governs until payment of the principal, or until the contract is merged in a judgment") (internal quotation marks and citation omitted); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 516 (S.D.N.Y. 2013) (citing the "background rule that contractual rates of interest supersede New York's statutory interest rate"). The Court's July 21, 2015 Order did not properly account for the interest on the disputed amount already being paid to Serengeti at the contractual rate specified in the notes, when ordering that prejudgment interest at the New York statutory rate be included in future increases to the bond amount.

   Serengeti does not adequately explain why the New York statutory rate should apply, rather than the agreed-upon contractual rate ordinarily applied by New York courts. First, Serengeti relies on *Amoco Transport Co. v. Dietze, Inc.*, 582 F. Supp. 804 (S.D.N.Y. 1984) for the proposition that prejudgment interest is necessary because AGL posted a bond and, therefore, continues to retain the benefit and use of all disputed amounts until the interpleader action is resolved. In *Amoco*, the court applied the New York statutory rate of interest because it found that the plaintiff "benefited enormously" by retaining the fund during the course of the litigation. *Id.* at 807-08. But Serengeti's reliance on *Amoco* is misplaced—there, unlike here, the plaintiff had not paid any interest on the amount in dispute. Indeed, the court expressly found that interest was appropriate because, had the plaintiff deposited the disputed amount with the court rather than post a bond, that fund may have been placed in an interest bearing account for the ultimate benefit of the claimants. *Id.* at 808. Serengeti is already receiving interest payments on the amounts in dispute—at the agreed-upon rate

under the Class I-A Notes—and thus the primary concern articulated in *Amoco* has been addressed without need to impose additional prejudgment interest.[1]

Serengeti also contends that prejudgment interest is appropriate because the Trustee delayed in filing this interpleader action. Serengeti sent the Trustee a letter asserting its right to payments on principal owed on September 22, 2014, but the Trustee did not file the interpleader action until May 19, 2015; a delay of nearly eight months. Pre-filing interest is owed by a plaintiff in an interpleader action "only when it improperly and excessively delays the filing of the interpleader action." *Avant Petroleum, Inc. v. Banque Paribas*, 652 F. Supp. 542, 544 (S.D.N.Y. 1987) *aff'd*, 853 F.2d 140 (2d Cir. 1988).

The cases cited in Serengeti's response to the Trustee's motion to approve the bond are inapposite. In each, the plaintiff retained the amount in dispute prior to commencing the interpleader action, and thus benefited from the delay through its continued retention of the funds. *See, e.g.*, *Connecticut Gen. Life Ins. Co. of New York v. Cole*, 821 F. Supp. 193 (S.D.N.Y. 1993) (twenty-month delay in commencing interpleader action improper where plaintiff retained proceeds from life insurance policy); *John Hancock Mut Life Ins Co v. Doran*, 138 F. Supp. 47 (S.D.N.Y. 1956) (ten-month delay in commencing interpleader action improper where plaintiff retained proceeds from life insurance policy). Here, in contrast, the Trustee received no benefit from delay because it did not retain any amounts in dispute prior to commencing the action.

Moreover, although Serengeti notes the delay, it is entirely silent as to whether that the Trustee's delay was unreasonable or excessive. Courts have held that delays in bringing interpleader

---

[1] The Court recognizes that because AGL is retaining, and presumably investing, the disputed amounts during the course of the interpleader action, it may have some opportunity to profit by arbitraging the return on the invested disputed amounts and the costs of the bond and supporting this action. But the purpose of a bond under § 1335 is to "insure compliance with any future order or judgment of the court in the action," *see* Wright & Miller, § 1716, not to penalize AGL for what is now at best a speculative benefit.

actions may be reasonable for a variety of reasons, depending on the particular circumstances at issue. *E.g.*, *Avant Petroleum,* 652 F. Supp. at 544 (delay not excessive where plaintiff attempted to negotiate settlement between claimants); *Aetna Life Ins Co v. Du Roure*, 123 F. Supp. 736, 740 (S.D.N.Y. 1954) (delay not excessive where plaintiff did not believe it could secure personal jurisdiction over the claimants); *see also Powers v. Metro. Life Ins. Co.*, 439 F.2d 605, 608 (D.C. Cir. 1971) (collecting cases). It is not clear why the Trustee delayed bringing the present action, but Serengeti nevertheless fails to argue that the delay was excessive. In any event, Serengeti does not attempt to explain how a delay in the commencement of an interpleader action favors a finding that prejudgment interest should be applied to *future* increases in the amount of the bond. Because Serengeti does not argue that the Trustee failed to act with reasonable promptness in commencing the action, and particularly in light of the Trustee's disinterested status, prejudgment interest is not appropriate.

This Order decides only the issue of whether prejudgment interest should apply to future increases in the bond at this time. It should not be read to prejudice any argument that any party may later raise regarding prejudgment interest outside of this context.

### IV.     CONCLUSION

For the reasons outlined above, AGL's motion for reconsideration is GRANTED. The Court's July 21, 2015 Order granting the Trustee's motion to approve the bond is modified to remove the requirement that prejudgment interest at New York's statutory rate be included in all

future increases to the bond amount.  The Trustee is ordered to serve a copy of this order on any parties who have not yet appeared through counsel and to retain proof of service.

The Clerk of Court is directed to terminate the motion pending at Docket Number 43.

SO ORDERED.

Dated:  September 4, 2015  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge